## THE EDWARD CHILTON.

District Court, W. D. New York. July 20, 1928.

1. Collision ⚒️115—Tug, attempting to turn around in channel in advance of passage of another tug towing large barge, held wholly at fault as regards damages to motorboat, struck after collision between tug and barge.

Where, during tug's maneuvers to turn around in canal, mate saw another tug coming up the channel with large barge in tow, first tug was under duty to remain on side of channel and permit the other tug and her tow to go past, and first tug, attempting to complete her turning operation, with result that her stern swung around and struck the port bow of the tow, was solely at fault as regards motorboat, moored at dock, which was struck by the second tug.

2. Collision ⚒️95(1)—Steamer burdened with tow has right of way.

It is a well-established rule that steamer burdened with tow has right of way.

In Admiralty. Libel by Harry S. Wright against the tug Edward Chilton, with the Marine Transit Corporation as claimant, in which the tug Liberty was impleaded. Decree condemning tug Liberty for libelant's damages.

Brown, Ely & Richards, of Buffalo, N. Y., for libelant.

William F. Purdy, of New York City, and Burke & Desmond, of Buffalo, N. Y., for respondent.

Stanley & Gidley, of Buffalo, N. Y., for impleaded respondent.

ADLER, District Judge. On November 16, 1926, the motorboat Walter J., used for delivery purposes, was moored at the Union Dock, City Ship Canal, Buffalo, N. Y., about 350 feet from the Michigan avenue drawbridge. The tug Chilton came through the drawbridge on its way up the canal. It was towing a large barge 115 feet long lashed to its port side. The bow of the barge extended about 60 feet in front of the bow of the Chilton. The speed of the Chilton was about 3 miles an hour right after it passed through

the bridge, and continued at that speed until the accident occurred. The tug Liberty had been coaling at a dock on the opposite side of the canal from where the Walter J. was moored and a little closer to the bridge. She was pointed upstream and in the opposite direction from the bridge. Just before the Chilton came through the bridge, the Liberty had finished coaling and started to turn around, in order to go downstream and through the bridge in the opposite direction from which the Chilton was coming. To accomplish this maneuver the Liberty went forward on a starboard sweep until it had gotten within about 20 feet of the opposite bank of the canal. Then it backed to port until its stern was within a few feet of another tug, which was moored on the side of the canal from which it started, but some little distance farther away from the bridge. Then, being pointed generally down the canal toward the bridge, it went forward with a sweep to starboard. In the meantime the Chilton and its tow had been coming up the center of the canal, favoring the starboard side, and the evidence is that, if it had kept on in a straight line as it was pointed, it would have cleared the Walter J., which was lying at the dock by from 15 or 20 feet. Just before it reached the Walter J., the Liberty, on the last leg of its turning operation, scuffed the bow of the barge lashed to the port side of the Chilton. When the Chilton and its tow got abreast of the Walter J., it started coming broadside toward the motorboat and struck it. The Walter J. started to fill with water and sank.

The undisputed testimony is that the midships of the Chilton struck the whole length of the Walter J., and that she came onto her broadside, as well as having some forward motion. It must reasonably be concluded, therefore, that the collision between the tow of the Chilton and the Liberty caused the sheering of the tug and its tow, which crushed the motorboat. The question is: Who was responsible for the collision?

When the Chilton started to come through the bridge, her captain testified that he saw the Liberty about 300 feet away, angling almost directly across the stream. The Liberty must then have been just about at the end of her forward movement toward turning around, and just about to make her second movement of backing to port. The captain of the Chilton continued straight on his course. He testified that he expected the Liberty would get out of his way.

[1, 2] The mate of the Liberty, who was navigating her, testified that he saw the Chil-

ton when she was coming through the bridge. It does not clearly appear just where the Liberty was when her navigator first saw the Chilton. He said that, before beginning to make his turning operation, he looked up and down the canal and saw no obstruction. It was a clear day, and the mate of the Liberty must have seen the Chilton at least as soon as the Chilton's captain saw the Liberty, because he was turning with the intention of going down through the bridge, which was less than 300 feet away. If he saw the Chilton as it was coming through the bridge, I conclude from all the testimony that at that time the Liberty was in the process of making, or had just finished, its forward movement, and was about to back up on its second movement toward turning around. It did then back up to straighten itself out in the channel close to the tug, which was moored on the side of the channel it had started from, but a little farther away from the bridge. At the completion of that operation the Liberty must have been pointed down the canal toward the bridge, and facing the Chilton and her tow, which were coming toward her. The two boats could not then have been very far apart, and I think it was the duty of the Liberty at that point, with the Chilton and her heavy tow coming up the canal in her direction, to have remained on her side of the channel, where she apparently was, and allowed the Chilton and her tow to go past. Instead of that she started up again, making necessarily a slight sweep to starboard, which swung her stern toward the center of the channel. It was then necessary for her, as testified by her mate, to speed up the Liberty to avoid collision. She very nearly did so, but did not quite get out of the way, and she struck the bow of the barge.

Just before the collision occurred, the Chilton and her tow were proceeding on its course at a speed of 3 miles an hour and well on her side of the channel. The Liberty was on her side of the channel, facing the Chilton, and about to begin the last lap of her turning operation. At this time there was no danger of a collision between the Liberty and the Chilton and her tow. The Liberty was in a position where she could with reasonable care have avoided the accident. She had stopped, and was about to come forward. If she had then waited for the Chilton to go by, there would have been no collision. By going forward when she did, with a curve to starboard and at some speed, her stern swung around and struck the port bow of the tow. I think the Liberty was solely to blame. She disregarded one of the well-established rules,

27 F.(2d)—40

that a steamer burdened with a tow has the right of way. She was unincumbered and mistress of her motions, and was out of danger. She took a chance by completing her turning movement when it was not necessary to do so.

Decree condemning the tug Liberty for the damages sustained by the libelant.